UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUR LA TABLE, INC.,

           Plaintiff,

       v.

SAMBONET PADERNO
INDUSTRIE, S.p.A., ROSENTHAL
SAMBONET USA, LTD., d/b/a
PADERNO WORLD CUISINE and
WORLD CUISINE,

           Defendants.

CASE NO. C14-1742JLR

ORDER

## I. INTRODUCTION

Before the court is Defendants Sambonet Paderno Industrie S.p.A. and Rosenthal

Sambonet USA, Ltd., d/b/a/ Paderno World Cuisine and World Cuisine's (collectively

"Sambonet") motion to dismiss Plaintiff Sur La Table, Inc.'s ("Sur La Table") complaint.

(Mot. (Dkt. # 9).)  Approximately one month after Sur La Table filed its complaint in this

case, Sambonet filed an action in the Central District of California that is, for all practical

1  purposes, the mirror image of this one.  Sambonet argues that this action is an improper

2  anticipatory suit, and therefore, Sambonet asks this court to dismiss Sur La Table's

3  action.  The court has considered the motion, all submissions filed in support of and

4  opposition to the motion, the balance of the record, and the applicable law.  No party has

5  asked for oral argument, and the court deems this motion appropriate for disposition

6  without it.  For the reasons stated below, the court GRANTS Sambonet's motion to

7  dismiss.

8                          **II. BACKGROUND**

9       Plaintiff, Sur La Table, is a company based in Seattle, Washington, that sells

10  gourmet kitchen, food, and related products.  (*See* Compl. (Dkt. # 1) at 2.)  Sambonet also

11  manufactures and sells a variety of kitchen products, including a "Spiral Vegetable

12  Splicer."  (Perry Decl. (Dkt. # 10) Ex. A at 1).  On October 28, 2014, an attorney

13  representing Sambonet sent a letter to Sur La Table via e-mail accusing Sur La Table of

14  selling a "flagrant counterfeit copy" of Sambonet's Spiral Vegetable Slicer product and

15  thereby infringing on Sambonet's protected trade dress.  (*Id.* at 2.)  In the letter,

16  Sambonet demanded that Sur La Table "immediately cease and desist" all sales and

17  advertisements of the allegedly infringing product.  (*Id.* at 3.)  The following day,

18  October 29, 2014, Sambonet's attorney sent Sur La Table another letter in which he

19  clarified that unless Sur La Table responded to the cease-and-desist letter "within ten (10)

20  days" or otherwise resolved the issue, Sambonet would "file a lawsuit for trade dress

21  infringement and other related claims in the United States District Court for the Central

22  District of California."  (Perry Decl. Ex. B at 2.)

ORDER - 2

One week later, on November 5, 2014, Sur La Table's attorney responded in a letter sent to Sambonet's attorney via e-mail.  (Perry Decl. Ex. C.)  Sur La Table's attorney acknowledged receipt of the letters dated October 28 and 29, 2014, and informed Sambonet's attorney that the matter had been referred to him "for investigation."  (*Id.* at 2.)  On November 12, 2014, Sur La Table filed suit in this court, requesting a declaratory judgment of non-infringement with respect to Sambonet's claims of trade dress infringement.  (Compl. at 2.)

The following day, November 13, 2014, Sur La Table's attorney sent a copy of the complaint to Sambonet's attorney, via email, to notify him of the present suit.  (Perry Decl. Ex. D.).  The cover letter explained that Sur La Table had no intention of halting sales of the allegedly infringing product, but that it would "consider any proposal" for alternative resolution of the dispute.  (*Id.* at 3.)  Besides the introductory letter sent November 5, 2014, Sur La Table's attorneys did not make any other attempt to contact Sambonet's counsel to discuss the matter prior filing suit in this court.  (Perry Decl. ¶ 6.)

On December 10, 2014, Sambonet filed an action against Sur La Table in the Central District of California.  *See Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.*, No. 2:14-cv-09473-FMO-RZ (C.D. Cal. Dec. 10, 2014).  In that action, Sambonet alleges the same trade dress claims at issue in this action, along with other violations of California law.  On December 12, 2014, Sambonet's counsel sent a letter to Sur La Table's attorneys demanding that Sur La Table dismiss the action filed in this court.  (Perry Decl. Ex. F at 2.)  When counsel for Sur La Table refused, (Perry Decl. ¶¶ 11-12.), Sambonet filed this motion to dismiss (*see generally* Mot.).

1

### III. ANALYSIS

2      The Supreme Court has explained that, "[i]n the declaratory judgment context, the

3 normal principle that federal courts should adjudicate claims within their jurisdiction

4 yields to considerations of practicality and wise judicial administration." *Wilton v. Seven*

5 *Falls Co.*, 515 U.S. 277, 288 (1995).  When deciding whether to exercise jurisdiction

6 over a declaratory judgment action, courts "must balance concerns of judicial

7 administration, comity, and fairness to litigants." *Principal Life Ins. Co. v. Robinson*, 394

8 F.3d 665, 672 (9th Cir. 2005) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 143, 144

9 (9th Cir. 1994).  One doctrine that often applies in instances such as this is the so-called

10 first-to-file rule.  *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir.

11 1991).

12      Under the first-to-file rule, a district court may transfer, stay, or dismiss an action

13 when a suit involving similar parties and issues has been filed in another district.

14 *Alltrade*, 946 F.2d at 623; *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95

15 (9th Cir. 1982).  Although the rule should not be disregarded lightly, "district court

16 judges can, in the exercise of their discretion, dispense with the first-filed principle for

17 reasons of equity." *Alltrade*, 946 F.2d at 628.  When determining whether application of

18 the first-to-file rule is appropriate, courts generally evaluate three threshold factors:  (1)

19 the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity

20 of the issues.  *Id.* at 625.  As the Ninth Circuit explained in *Alltrade*, "[t]he circumstances

21 under which an exception to the first-to-file rule typically will be made include bad

22

ORDER - 4

1  faith, . . . anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628 (citations

2  omitted).

3         There is no dispute that the Washington action was filed before the California

4  action, and that the two actions involve the same parties and substantially similar issues.

5  Thus, the question of whether the first-to-file rule applies turns on whether the

6  Washington action was anticipatory.  As this court has previously explained, "[a]n action

7  is anticipatory when the plaintiff files it after receiving 'specific, concrete indications that

8  a suit by the defendant was imminent.'"  *ivi, Inc. v. Fisher Commc'ns*, No. C10-1512JLR,

9  2011 WL 197419, at *3 (W.D. Wash. Jan. 19, 2011) (quoting *Guthy-Renker Fitness, LLC*

10 *v. ICON Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998)).  "Application of

11 the first to file rule in such situations would thwart settlement negotiations, encouraging

12 intellectual property holders to file suit rather than communicate with the alleged

13 infringer."  *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal.

14 2003).

15        It is true that the timing of a lawsuit, by itself, cannot make a suit anticipatory; if it

16 could, then "nearly every declaratory judgment action would be anticipatory."

17 *Volunteers for Catholic Orgs. v. Superior Council of the U.S.*, No. C13-00281 PSG, 2013

18 WL 4533782, at *1 (N.D. Cal. Aug. 26, 2013).  This court has explained, however, that

19 when "a declaratory judgment action has been triggered by a cease and desist letter,

20 equity militates in favor of allowing the second-filed action brought by the true plaintiff

21 in the dispute to proceed to judgment rather than the first."  *ivi, Inc.*, 2011 WL 197419, at

22 *3.  Other decisions in this circuit support the same conclusion.  *See, e.g., Topics Entm't*

1  *Inc v. Rosetta Stone Ltd.*, No. C09-1408RSL, 2010 WL 55900, at *4 (W.D. Wash. Jan.

2  10, 2010); *K-Swiss, Inc. v. Puma AG Rudolf Dassler Sport*, No. CV 09-3022 GAF

3  (PLAx), 2009 WL 2049702, at *3 (C.D. Cal. July 9, 2009); *Xoxide, Inc. v. Ford Motor*

4  *Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006); *Z-Line*, 218 F.R.D. at 667.

5        This dispute was triggered when Sur La Table received two letters from

6  Sambonet, on October 28 and 29, 2014.  The first letter explicitly demanded that Sur La

7  Table "immediately cease and desist" the allegedly infringing activity and respond within

8  10 business days.  (Perry Decl. Ex. A at 3.)  The second letter clarified that Sambonet

9  was prepared to file suit in the United States District Court for the Central District of

10 California if Sur La Table failed to respond or otherwise resolve the issues Sambonet had

11 raised "within ten (10) days from the date the [first letter] was sent."  (Perry Decl. Ex. B

12 at 2.)  Sur La Table's attorney replied one week later, on November 5, 2014, with an

13 introductory letter sent via email in which he explained that the matter had been referred

14 to him "for investigation."  (Perry Decl. Ex. C at 1.)  Before communicating with

15 Sambonet's attorney again, however (Perry Decl. ¶ 6), Sur La Table filed this action on

16 November 12, 2014—a mere seven days after its attorney sent the introductory letter.

17        On November 13, 2014—the day after this action was filed—Sur La Table's

18 attorney sent a copy of the complaint to Sambonet's attorney via e-mail, and, in the cover

19 letter, expressed Sur La Table's belief that Sambonet's trade dress claims were "without

20 merit."  (Resp. (Dkt. # 12) at 4; Perry Decl. Ex. D.)  The cover letter also stated that Sur

21 La Table had no intention of discontinuing sales of the disputed product, but that it would

22 be "willing to consider other ways to resolve this dispute."  (*Id.*)

ORDER - 6

1    To support this questionable behavior, Sur La Table contends that Sambonet

2 effectively forced Sur La Table to file this suit when Sambonet failed to file its own

3 action when the 10-day "deadline set by Sambonet came and went without any filing by

4 Sambonet." (Resp. at 4.)  Sur La Table points out that Sambonet did not, in fact, file suit

5 in California until December 10, 2014, "nearly one month after Sur La Table filed this

6 action and more than one month after Sambonet's initial 'threat' of litigation deadline

7 passed." (*Id.* at 5.)  Instead of communicating with Sambonet to discuss the dispute prior

8 to filing, however, Sur La Table jumped to the conclusion that a non-judicial "resolution

9 of the dispute was impossible," because "no settlement short of complete cessation of

10 sales was even hinted at by Sambonet" in its letters dated October 28 and 29, 2014. (*Id.*

11 at 8.)  Sur La Table attempts to bolster its claims that this action should proceed here by

12 explaining that "all of Sur La Table's witnesses and evidence are in Seattle" (*id.* at 2),

13 while speculating that "Sambonet's witnesses and evidence are likely spread throughout

14 the United States and Italy." (*Id.* at 3).

15    Sambonet argues that this suit is anticipatory—and therefore improper—because

16 Sur La Table knew "it was about to be sued by Sambonet for trade dress infringement

17 based on the identical facts alleged here." (Mot. at 5.)  Sambonet asserts that it did not

18 file its suit by the initial deadline it had set because "[t]hat date certain was obviated by

19 [Sur La Table] counsel's deceptive letter stating he was investigating the facts." (Reply

20 (Dkt. # 15) at 8.)  Permitting this suit to proceed would, according to Sambonet, "thwart

21 the important public policy that encourages intellectual property holders . . . to attempt to

22 settle their disputes without the need for court intervention." (Mot. at 5.)  Additionally,

ORDER - 7

as the "natural plaintiff," Sambonet contends that choice of forum belongs to it (*id.*), and that Sur La Table's focus on convenience factors "sidesteps" the primary issue:  Whether Sur La Table's action was an improper anticipatory declaratory relief suit (Reply  at 1-2). In any event, Sambonet asserts that the Central District of California is the most convenient forum for this dispute because most of its witnesses, its development and sales of the product at issue, and its efforts to restrain the product's counterfeiting are centered in Los Angeles, California.  (*Id.* at 9.)[1]

The court largely agrees with Sambonet.  Sambonet's cease-and-desist letters constitute "specific, concrete indications that a suit by the defendant was imminent." *ivi, Inc.*, 2011 WL 197419, at \*3.  Sur La Table's rush to file the action here, before even attempting to discuss a possible resolution with Sambonet, makes this action an improper anticipatory suit.  The totality of the circumstances here leads the court to conclude that an exception from the ordinary first-to-file rule applies.  Although the court notes the importance of generally adhering to the first-to-file rule, in this case, it exercises its discretion to decline to hear Sur La Table's case.[2] *Alltrade*, 946 F.2d at 628.

---

[1]Nothing in the court's decision precludes Sur La Table from petitioning the district court in the Central District of California to transfer the case to this district under 28 U.S.C. § 1404.

[2]In its reply memorandum, Sambonet asserts that Sur La Table's responsive memorandum was filed four days late, and therefore the court should strike it.  (Reply at 9-10.) Sambonet's motion was noted for Friday, January 23, 2015.  (*See* Mot. at 1.)  Therefore, Sur La Table's response ordinarily would have been due on Monday, January 19, 2015.  *See* Local Rules W.D. Wash. LCR 7(b)(3) ("Any opposition papers shall be filed and served not later than the Monday before the noting date.").  However, "[i]f the deadline for a party's response . . . falls on a date that is a legal holiday . . . , the party's response . . . is due on the following day that is not a Saturday, Sunday, or legal holiday." *Id.* LCR 7(d)(5).  Monday, January 19, 2015, was a legal holiday.  Accordingly, Sambonet's response, which was filed the next day, was timely.

## IV. CONCLUSION

For the foregoing stated reasons, the court GRANTS Sambonet's motion to dismiss (Dkt. # 9), and DISMISSES this matter without prejudice to Sur La Table's rights to seek any appropriate claims or other relief in the Central District of California lawsuit.

Dated this 27th day of March, 2015.

JAMES L. ROBART
United States District Judge

On January 26, 2015, Sur La Table filed a surreply in which it moved the court to strike the second declaration of Michael Perry (2d Perry Decl. (Dkt. # 16)), which was filed in conjunction with Sambonet's reply memorandum. (Surreply (Dkt. # 19) at 2-3.) The court did not consider Mr. Perry's second declaration in granting Sambonet's motion to dismiss, and accordingly DENIES Sur La Table's motion to strike as moot.

ORDER - 9